IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>RICHARD EARL JAENSCH, )<br>          Defendant. ) | No. 1:09cr284 |

## MEMORANDUM OPINION

Defendant, Richard Earl Jaensch, was charged in a two-count indictment alleging (i) knowing and unlawful production of a false identification document in violation of 18 U.S.C. § 1028(a)(1) (Count 1), and (ii) knowing transfer of a false identification document that was produced without lawful authority in violation of 18 U.S.C. § 1028(a)(2) (Count 2). A four-day jury trial resulted in a verdict of acquittal on Count 2 and a mistrial on Count 1, as the jury was unable to reach a verdict on that count. Now, in the interim before a new trial on Count 1, defendant requests a judgment of acquittal on the grounds (i) that the government failed to adduce substantial evidence at trial to sustain a conviction, (ii) that the government failed to present evidence to support a conclusion that venue is appropriate in the Eastern District of Virginia, and (iii) that the statute in issue is unconstitutionally vague as applied to defendant. The parties have fully briefed defendant's motion, and further argument is dispensed with because it would not aid the decisional process. Accordingly, the matter is now ripe for disposition. For the reasons set forth herein, defendant's motion for judgment of acquittal must be denied.

**I.**

In the course of a four-day trial, the government presented eleven witnesses, and defendant presented four. Among the government's witnesses were (i) Holly Coffey, the Deputy Assistant Chief of Protocol for the U.S. Department of State, who testified that the identification document in question was not issued by the United States Government, (ii) Vico Confino, the owner of Maxsell Corporation, which apparently manufactured the identification document and sent it to defendant, and (iii) Special Agent Frank Morris, of the Diplomatic Security Service of the U.S. Department of State, who authenticated the videotapes of his interviews with defendant following defendant's arrest. Defendant called (i) James Harper of the Cato Institute, to testify as an expert on the use of private identification documents and Transportation Security Administration ("TSA") procedures at airport screening checkpoints, and (ii) three character witnesses. Relevant portions of the trial may be succinctly summarized.

Defendant is a self-employed master plumber, who, it appears, ordered the identification document in issue—admitted into evidence as Exhibit 1—from Maxsell Corporation, a Florida company that specializes in producing identification cards and badges. To prove, as required, that defendant produced or caused the production of Exhibit 1, the government offered Mr. Confino's testimony and a purchase order from Maxsell Corporation. Mr. Confino testified that the purchase order indicated that defendant had ordered Exhibit 1 and that it was shipped to his home in Fairfax County, Virginia. Mr. Confino further testified that where identification documents contained signature blanks, Maxsell Corporation would normally mail the identification documents to the purchaser to be signed and laminated by the user. Defendant's

statements to Special Agent Morris—acknowledging that Exhibit 1 was his and that it described him as he wanted to be described—was further evidence that defendant had produced or caused the identification document to be produced.

To prove that the identification document in issue appears to be issued by or under authority of the United States Government, the government introduced the document itself as Exhibit 1. Exhibit 1 consists of a black wallet-style badge case, a metallic badge, and a laminated identification card. The badge consists of a five-pointed star, not dissimilar to the star found on badges carried by U.S. Marshals. On the inside of the star is the Great Seal of the United States, surrounded by the words "The United States of America." On the outside of the five-pointed star are the words "Ambassador/Diplomat" and what appears to be a serial number, 05-04132. The front of the identification card, which is slightly larger than a state-issued driver's license, states at the top, in large gold letters, "United States of America." Directly below that are the words "Head of State – Diplomat." The identification card lists defendant's name as "Richard: Jaensch," it lists an "Apostille Number" that corresponds to the serial number on the badge, and it lists defendant's height, weight, eye and hair color, and his date of birth. Defendant's passport-sized photograph appears to the right of these vitals, with the words "Not Valid Without Photo" and "not subject to delay" printed in red along the right and lower sides of the photograph. Below the vitals and photograph, the card states, "The man pictured with signature is to be Provided All Rights and Privileges according to The Vienna Treaties Convention on Diplomatic Relations of April 18, 1961." A signature containing defendant's name in blue ink appears below this sentence. Finally, the back of the identification card states,

in bold letters:

> This claim of Absolute Sovereignty (Head of State) in the United States of America is well founded and established. In it's [sic] attending documents, consisting of the Act of State Public Document of the United States of America that has been both domestically and Internationally authenticated, certified, and registered by both the Foreign Minister of the United States of America and the Secretary General of the United Nations.

To prove, as the statute requires, that Exhibit 1 was not produced by or under authority of the United States Government, the government presented testimony from Holly Coffey, an official with the United States Department of State, who was qualified, without objection, as an expert in identification documents issued by the United States Government. Ms. Coffey confirmed that Exhibit 1 is not a government-issued identification document. She identified the numerous differences between Exhibit 1 and the identification cards that the State Department actually issues to diplomats. Among the differences identified by Ms. Coffey are the following:

> (i) government-issued diplomatic identification cards are somewhat smaller than the identification card element of Exhibit 1;
>
> (ii) even though Exhibit 1 included a badge and badge case, the State Department does not issue badges or badge cases to diplomats, but instead, only issues identification cards;
>
> (iii) the seven-digit "Apostille Number" does not correspond to the State Department's numbering system;
>
> (iv) a valid "head of state" diplomatic identification is blue, whereas Exhibit 1 is white with black and gold lettering;
>
> (v) the State Department uses the term "full immunity," not the "absolute immunity" referenced in Exhibit 1;
>
> (vi) the State Department does not use the phrase "not subject to delay" contained on Exhibit 1;

(vii) the State Department does not reference the "Vienna Treaties Convention on Diplomatic Relations" referred to in Exhibit 1;

(viii) Exhibit 1 lacks a border, whereas a valid "head of state" diplomatic identification card has a blue border;

(ix) Exhibit 1 contains the Great Seal but does not contain the State Department's seal, as would a valid diplomatic identification;

(x) Exhibit 1 does not clearly identify the country for which the bearer is an ambassador, while a valid identification would;

(xi) there is no "Foreign Minister of the United States," despite the language on the back of the identification card in Exhibit 1;

(xii) despite language to the contrary, the United Nations plays no role in validating diplomatic identification for the United States; and

(xiii) Exhibit 1 does not provide a phone number at which a State Department employee can be reached to confirm the bearer's diplomatic status, even though a genuine government-issued identification would provide this phone number.

Although Ms. Coffey pointed to these differences in support of her testimony that Exhibit 1 was not issued by the U.S. government, she was not asked, nor did she offer any opinion on whether Exhibit 1 would appear to a reasonable person to have been issued by the U.S. Government.

Finally, to prove, as required, defendant's knowledge that Exhibit 1 would appear to a reasonable person to have been issued by the U.S. government, the government offered into evidence properly authenticated videotapes of defendant's interview with a federal agent. In that interview, defendant acknowledged that Exhibit 1 was his and that he had used it as identification at Transportation Security Administration ("TSA") airport checkpoints and in a judicial proceeding in Fairfax County Circuit Court. Moreover, defendant stated that he believed that when he showed Exhibit 1 at airports TSA agents "probably assume[d] that I work for the

government." He also noted that when asked by TSA agents "who I work for," he would not provide his real occupation—he is a self-employed plumber—because "[i]t would just raise eyebrows." Gov't Ex. 10H.

The jury acquitted defendant on Count 2 (the count alleging transfer), but failed to reach a verdict on Count 1 (the count alleging unlawful production). Accordingly, a mistrial was declared with respect to Count 1. Thereafter, defendant timely filed a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., on November 17, 2009. In his motion, he argues (i) that the government failed to adduce sufficient evidence at trial to sustain a conviction, (ii) that the government failed to adduce sufficient evidence to establish that venue is proper in the Eastern District of Virginia, and (iii) that 18 U.S.C. § 1028(a)(1) is unconstitutionally vague as applied to the facts of this case.

## II.

Entry of judgment of acquittal is appropriate where "the evidence is insufficient to sustain a conviction." Rule 29(a), Fed. R. Crim. P. The standard governing such determinations is well-settled in this circuit. Specifically, the applicable test is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982) (citing *United States v. Dominguez*, 604 F.2d 304, 310 (4th Cir. 1979); *United States v. Stroupe*, 538 F.2d 1063, 1066 (4th Cir. 1976)). Accordingly, the evidence must be sufficient to support a "reasonable inference" that each of the elements necessary for conviction are satisfied beyond a reasonable doubt. *Id.* at 474; *see also*

*United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) ("[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.").

Although defendant acknowledges that *MacCloskey* and *Burgos* are binding precedent, he misreads these cases, arguing incorrectly that "[n]o case or statute supports the proposition that different, reasonable interpretations of the evidence presented at a mistrial are resolved in favor of the prosecution on a motion for a judgment of acquittal pursuant to Rule 29." Def.'s Rep. Br. at 1–2. Yet, that is precisely the proposition for which *MacCloskey* and *Burgos* stand because these decisions make clear that the government is entitled to all favorable reasonable inferences from the evidence, notwithstanding that other reasonable inferences may also be drawn. Indeed, *MacCloskey* establishes that the evidence must be taken "in the light most favorable" to the government. 682 F.2d at 473. And while the inferences supporting a finding of guilt must be reasonable, a court need not conclude, as defendant would apparently require, that inferences supporting a finding a guilt are the *only* reasonable inferences that could be drawn from the evidence presented. *See id.* at 474. Nor is there any support for the proposition that the Rule 29 standard applicable to a surviving count following a mistrial is different from the standard applicable at any other time a Rule 29 motion may properly be brought. Thus, the sufficiency of evidence analysis properly turns on the question whether, drawing all reasonable inferences in favor of the government, a reasonable trier of fact could conclude that the evidence presented establishes defendant's guilt beyond a reasonable doubt. The government's evidence clearly meets this standard.

Specifically, ample evidence was presented at trial to allow a jury to find beyond a reasonable doubt each of the elements of the charged offense, namely (i) that defendant produced or willfully caused to be produced (ii) an identification document (iii) that would appear to a reasonable person to be issued by or under authority of the United States Government (iv) but was not in fact issued by or under such authority, and (v) that defendant knew that this identification document appeared to a reasonable person to be issued by or under authority of the United States Government but was not. As discussed below, the conclusion that elements (i) and (v) are satisfied is supported by Exhibit 1, Mr. Confino's testimony, the Maxsell purchase order, and defendant's own statements to an investigator; the conclusion that elements (ii) and (iii) are met is supported by Exhibit 1 itself; and the conclusion that element (iv) is satisfied is supported by Ms. Coffey's testimony. Thus, because there is sufficient evidence from which a reasonable trier of fact could find all of the offense elements beyond a reasonable doubt, defendant's challenge to the sufficiency of the evidence must fail.

Defendant's first argument to the contrary is that the government failed to present sufficient evidence that he "produced" Exhibit 1, the identification document at issue, as required by § 1028(a)(1). Specifically, Defendant contends that the government did not prove that defendant himself produced Exhibit 1. This argument is flatly wrong; it incorrectly assumes that defendant cannot be convicted of an offense under § 1028(a)(1) unless the government proves that defendant personally performed all the acts necessary to produce Exhibit 1. This reading of § 1028(a)(1) is foreclosed by 18 U.S.C. § 2(b) and *United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003).

At issue in *Rashwan* was the conduct of a defendant, charged under § 1028(a)(1), who did not himself perform all the acts necessary to make or produce an identification document, but instead induced a Virginia Department of Motor Vehicles to do so by making false statements concerning his place and duration of state residency. On these facts, the Fourth Circuit concluded that "[w]hether or not Rashwan physically produced the false documents himself is irrelevant to his conviction." 328 F.3d at 165. This conclusion was supported by 18 U.S.C. § 2(b), which states that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." Thus, even if Rashwan did not himself produce the identification document, he was nonetheless liable for having done so because he willfully caused a third party to do so. Accordingly, even if defendant here did not himself produce Exhibit 1, he is criminally liable under § 1028(a)(1) if he willfully caused another to do so.

Nor is defendant correct in contending that the government failed to present substantial evidence that defendant willfully caused Exhibit 1 to be produced. To the contrary, the government presented credible evidence that Exhibit 1 was created by Maxsell Corporation pursuant to a purchase order containing defendant's name and address in the shipping and billing columns. Mr. Confino, Maxsell Corporation's president, testified that these purchase orders are created when a customer submits an order by telephone or via the Internet. Moreover, the purchase order—and Exhibit 1 itself—contains an "apostille number" that corresponds to an

apostille that defendant obtained from the office of the Kansas Secretary State.[1] Finally, the government presented defendant's own statement to Special Agent Morris that the identification document belonged to him and described him as he wanted to be described. From this evidence, a reasonable trier of fact could readily conclude, beyond a reasonable doubt, that defendant willfully caused the identification document at issue to be produced by Maxsell Corporation.

Moreover, quite apart from this aiding and abetting evidence, there is also substantial evidence that defendant personally performed some of the acts required to make or produce Exhibit 1. Indeed, Mr. Confino testified that in the ordinary course of Maxsell Corporation's business, identification cards with a signature blank would typically be shipped to a customer unlaminated so the customer could sign the card and then laminate it. Defendant does not dispute that such conduct would constitute "production" under § 1028(a)(1). Instead, he contends that the government did not adduce substantial evidence to support a finding that defendant himself produced Exhibit 1 (i) because Mr. Confino acknowledged that it was possible that a purchaser could send a digital image of a signature to be placed on an identification card by Maxsell Corporation, and (ii) because the government did not adduce any evidence to the effect that the signature on Exhibit 1 was made with a pen, rather than inserted digitally.[2] Neither of

---

[1] The apostille purports to confirm the validity of a notarization of defendant's signature on a document.

[2] It is important to note that defendant does not argue that the government failed to adduce substantial evidence that the signature on Exhibit 1 is defendant's. Indeed, the government offered into evidence two exhibits with notarized signatures by defendant, and a reasonable factfinder could readily conclude, without expert assistance, that these notarized signatures match the signature on Exhibit 1. *See United States v. Mathias*, 36 F. 892 (C.C.D.S.C. 1888) *Keister's Executors v. Philips' Executrix*, 98 S.E. 674 (Va. 1919); 80 A.L.R.2d 272 § 1 (noting "almost universally recognized" common law rule that jury may compare proved writing

these arguments is persuasive. First, the existence of a mere hypothetical possibility that Maxsell Corporation could digitally insert signature images onto identification cards does not, without more, render unreasonable a conclusion that the signature at issue here was produced with a pen. Second, while it is true that the government did not provide expert testimony to prove that the signature on Exhibit 1 was hand-written, and not digitally inserted, a juror could reasonably reach that conclusion without the aid of any expert testimony.[3] Additionally, it is pellucidly clear, from a cursory examination of Exhibit 1, that defendant's photograph was physically affixed to the document before lamination and is not a digital image that was inserted onto the document template by computer. This further supports a conclusion that defendant authenticated and assembled—and therefore "produced"—Exhibit 1. Thus, there was sufficient evidence from which a reasonable juror could conclude (i) that defendant willfully caused another to produce Exhibit 1, or (ii) that he authenticated and assembled—and therefore produced—it himself.[4]

---

with writing in issue without expert assistance). Instead, defendant merely argues that the government has not proven that he signed the identification document with a pen rather than by transmitting a computerized image of his signature to Maxsell Corporation. As discussed *supra*, even assuming that a jury finds that defendant did not physically sign Exhibit 1, it could nonetheless reasonably conclude that he willfully caused another to produce identification document and is thus liable under 18 U.S.C. §§ 2(b) and 1028(a)(1).

[3] It is worth noting that one regularly encounters digital image signatures, such as on driver's licenses, as well as handwritten signatures on any number of identifications and instruments. In this instance, a reasonable juror could examine Government Exhibit 1 and conclude that the signature was printed by pen and not by computer.

[4] Nor are these two theories mutually exclusive. Indeed, a reasonable factfinder could readily conclude that defendant (i) willfully caused Maxsell Corporation to produce Exhibit 1, excluding his photograph and signature, and sent it to him unlaminated, at which point defendant (ii) signed it, affixed his photograph, and laminated it, thus authenticating and assembling it. But, as discussed *supra*, a jury would only have to find that defendant produced Exhibit 1 in one of the two manners in order for the production element to be satisfied.

Defendant further argues that the government did not present sufficient evidence that Exhibit 1 is a false identification document that "appears to be issued by or under authority of the United States Government." § 1028(d)(4)(B). In support of this argument, defendant notes that government witness Holly Coffey, an official with the office of the State Department that issues diplomatic identifications, testified that Exhibit 1 was not issued by or under authority of the United States Government. In his brief, defendant lists the numerous differences Ms. Coffey identified between Exhibit 1 and a genuine government-issued diplomatic identification. Yet, these details—and Ms. Coffey's testimony—are principally probative of the question whether the identification document at issue was actually issued by or under authority of the United States Government. The mere fact that Ms. Coffey could distinguish between Exhibit 1 and the genuine article has no conclusive effect on whether a reasonable person of ordinary intelligence would believe that Exhibit 1 was government-issued. Defendant's argument to the contrary, taken to its logical conclusion, would require that an identification document must be so similar to the genuine article that it would fool a government expert.[5] So construed, § 1028(a)(1) would cover only a very narrow range of conduct, and would fail to reach the broader range of pernicious conduct aimed at by the statute, where persons in a variety of contexts (e.g., at airports, government buildings, movie theaters, bars, etc.) use false identification badges that appear to be issued by the U.S. Government to deceive persons who are not experts.

In sum, the differences between Exhibit 1 and a valid government-issued identification

---

[5] Indeed, defendant's proposed jury instruction would have required that the jury find that Exhibit 1 was "virtually indistinguishable" from a genuine government-issued identification document.

document establish that Exhibit 1 is not government-issued. To be sure, these differences may also be relied on in support of defendant's argument that a reasonable person who is not an expert would not believe that Exhibit 1 is government-issued. But importantly, the cited differences do not, as a matter of law, conclusively establish that reasonable jurors could not conclude beyond a reasonable doubt that Exhibit 1 appears to have been issued by or under authority of the U.S. government. Instead, the identified differences—in color, size, border style, and specific variances in phrasing—are of the sort that might immediately strike the trained eye, such as Ms. Coffey's, but that could go unnoticed by the average person lacking special skills or training in identification documents. On the other hand, the badge features a large metallic star featuring the great seal, the words "United States of America," and is engraved with the words "Ambassador/Diplomat" and what appears to be a serial number. The identification card itself says "United States of America" and "Head of State – Diplomat" in large letters. It purports to accord the bearer with "Rights and Privileges according to the Vienna Treaties Convention on Diplomatic Relations of April 18, 1961." Indeed, the face of Exhibit 1 is itself sufficient evidence to allow a reasonable jury to conclude that the identification document appears to be issued by or under authority of the United States Government. Thus, the government has presented sufficient evidence from which a reasonable factfinder could conclude that Exhibit 1 is a false identification document under § 1028(a)(1).

Defendant further argues that the government failed to adduce evidence that defendant *knew* that Exhibit 1 was a false identification document. The record refutes this argument; a reasonable juror could infer such knowledge from the circumstances of this case. As discussed

*supra*, there is sufficient evidence from which a reasonable factfinder could conclude (i) that defendant willfully caused another to produce Exhibit 1, and (ii) that Exhibit 1 appears to have been issued by or under authority of the United States. Once a factfinder has reached both of these conclusions, it is not difficult to reach the further conclusion that defendant knew that Exhibit 1 is a false identification document. Indeed, as the government notes, defendant had notice that he could not produce Exhibit 1 because (i) a similar identification document was confiscated during the course of an earlier judicial proceeding in Fairfax County Circuit Court, after which defendant apparently ordered Exhibit 1, and (ii) defendant admitted in his interview with a federal agent that when he presented his identification, TSA agents assumed that he worked for the government, and he did not tell people that he was a plumber because he feared "it would just raise eyebrows." From these facts, it is clear that a jury could reasonably conclude that defendant knew that Exhibit 1 was a false identification document.

Finally, defendant argues that the government failed to present substantial evidence of the jurisdictional element required for a conviction under § 1028. Yet, as defendant admits, jurisdiction exists under the statute if Exhibit 1 is a false identification document, namely, an identification document that appears to be issued by or under the authority of the United States but is not. § 1028(a)(1). Because, as discussed above, the evidence presented is sufficient for a jury reasonably to conclude that Exhibit 1 is a false identification document, the government has presented substantial evidence that the jurisdictional requirement of § 1028(c)(1) is met.

### III.

Defendant next argues that venue is lacking in the Eastern District of Virginia. In the

absence of an applicable statute to the contrary, venue ordinarily lies in any judicial district "where the offense was committed." Rule 18, Fed. R. Crim. P. In determining where the offense was committed, courts consider "the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 7 (1998). Importantly, the government bears the burden of proving venue only by a preponderance of the evidence; thus on a motion for judgment of acquittal, the defendant must show that no reasonable juror could conclude by a preponderance of the evidence that venue exists. *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2004).

In this case, the government adduced evidence that defendant ordered, authenticated, and assembled Exhibit 1 from within the Eastern District of Virginia. Indeed, the purchase order for Exhibit 1 lists defendant's residence, which is within the Eastern District of Virginia, as the "sold to" and "ship to" addresses. This is strong evidence that defendant ordered the identification document—or, put another way, that he willfully took steps to cause Exhibit 1 to be produced—within the Eastern District of Virginia. Moreover, because the evidence adduced at trial indicates that the identification document in issue was shipped to defendant's home within the Eastern District of Virginia, a jury that reasonably concludes that defendant authenticated and assembled Exhibit 1 would likely conclude that he did so within the Eastern District of Virginia. Accordingly, because a reasonable jury could conclude by a preponderance of the evidence that a substantial portion of the alleged offense conduct occurred within the Eastern District of Virginia, defendant's motion for judgment of acquittal for lack of venue must be denied.

IV.

Finally, defendant argues that the "appears to be issued by or under authority of the United States" language of § 1028(c)(1) is unconstitutionally vague. First, defendant renews his argument that the statute is subject to facial attack and elevated scrutiny in the vagueness analysis because it implicates his First Amendment rights. Specifically, he claims that his alleged production of the identification document is protected "expressive conduct" and that a law prohibiting unauthorized production of identification documents when they appear to be issued by the United States Government chills exercise of his First Amendment rights. Yet, the Fourth Circuit has already rejected this argument in *United States v. Cline*, 286 F. App'x 817, 820 (4th Cir. 2008). There, the criminal defendant was prosecuted under a provision of § 1028 for trafficking in false authentication features for use in a false identification document that appears to be issued by or under the authority of a state government. *See* 18 U.S.C. § 1028(a)(8). More specifically, the defendant in that case admitted to trafficking in identification documents that resembled New York State drivers licenses in "format, layout, and features," namely, a New York state seal, color blending, and bar codes, even though a disclaimer on the back of the identification stated that it was "NOT A GOVERNMENT DOCUMENT." 286 F. App'x at 819. Cline argued that § 1028(a) was unconstitutionally overbroad and vague. The Fourth Circuit rejected the argument, concluding that "no First Amendment freedom is affected" because the statute only covers "documentation that appears to be issued by a governmental entity." *Id.* at 820. The same analysis applies with equal force here. By prohibiting defendant from knowingly producing, without lawful authority, identification documents that reasonable people would believe were issued by the federal government, the statute does not infringe on any protected

rights of speech, association, or religion. Put simply, the First Amendment is not implicated in this case.

Next, attacking § 1028(a)(1) as unconstitutionally vague as applied to the facts of this case, defendant argues that the application of an objective "reasonable person" standard for determining when an identification document "appears to be issued by or under authority of the United States Government" renders the statute void for vagueness because it would allow the jury to reach a conclusion "based solely on the personal predilections of the jurors." This argument is meritless.

To begin with, a number of federal criminal statutes expressly employ a "reasonable person" standard in defining critical elements, and do so without running afoul of any vagueness standard.[6] More to the point, in the case of criminal statutes that do not expressly employ such a standard, courts have applied the standard as a judicial gloss on such general intent criminal statutes precisely to *prevent* any vagueness concerns.[7] Thus, the mere application of an objective

---

[6] *See, e.g.*, 18 U.S.C. § 1589(c)(2) (statute criminalizing forced labor) (defining "serious harm" by reference to whether a "reasonable person" would feel compelled to continue labor in those circumstances); 18 U.S.C. § 1591(e)(4) (statute criminalizing sex trafficking of children by force, fraud, or coercion) (same); 18 U.S.C. § 1801(b)(5) (statute criminalizing video voyeurism) (requiring victim to have a reasonable expectation of privacy, defined as "circumstances in which a reasonable person would believe" that he or she had privacy).

[7] *See, e.g., United States v. Darby*, 37 F.3d 1059, 1064 (4th Cir. 1994) (construing 18 U.S.C. § 875(c), statute banning threatening communications, to require that "a reasonable recipient of the communication would interpret it as a threat"). It is true that the Fourth Circuit has held that a "reasonable person" standard is inappropriate "in instructions pertaining to a specific intent crime." *United States v. Hsu*, 364 F.3d 192, 204 (4th Cir. 2004) (quoting *United States v. George*, 266 F.3d 52, 60 (2d Cir. 2001)). Yet, a statute that requires knowledge, but not willful conduct, such as § 1028(a)(1), creates a general intent crime, not a specific intent crime. *George*, 266 F.3d at 59.

standard does not convert an otherwise-constitutional statute into one that is unconstitutionally vague as applied. Nor, contrary to defendant's contention, does the application of an objective standard to define "appears to be issued" require a jury in this case to "make a factual finding not supported by any evidence presented at trial." As discussed *supra*, Exhibit 1, standing alone, provides ample evidence from which reasonable jurors, using their good sense and common knowledge of the natural tendencies and inclinations of human beings,[8] could reasonably conclude that the "appears to be issued" element is met.

Nonetheless, a statute may be void for vagueness as applied to the facts of a given case where the statute in issue encourages arbitrary or discriminatory enforcement or where the defendant lacked fair notice that his conduct was unlawful. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *United States v. Hsu*, 364 F.3d 192, 196 (4th Cir. 2004); *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003). At the same time, however, it is well settled that intent requirements in statutes "tend[] to defeat any vagueness challenge based on the potential for arbitrary enforcement." *Klecker*, 348 F.3d at 71. Moreover, when a statute imposes a scienter requirement to the effect that the defendant should have known of the unlawfulness of his conduct, it is impossible, as a matter of logic, that he would lack adequate notice of the unlawfulness of his conduct. *See Hsu*, 364 F.3d at 197 n.1 (concluding that where "the government must prove that a defendant intended to violate the law to obtain a conviction," there is no concern about adequate notice of the unlawfulness of conduct (internal

---

[8] *See* O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* § 12.02 (5th ed. 2000).

citation omitted)); *United States v. Rosen*, 445 F. Supp. 2d 602, 624–26 (E.D. Va. 2006) (same).

In this case, § 1028(a)(1) requires a jury to find that defendant acted with the knowledge that the identification document in issue was "false." In other words, to be criminally liable, defendant must have known that Exhibit 1 would appear to a reasonable person to be government-issued. This requirement cures the statute of any vagueness that may exist with respect to when a document "appears to be issued by or under authority of the United States Government." Put another way, in order to know that Exhibit 1 was a "false identification document," defendant would be required to have known at the time of production that Exhibit 1 would appear to a reasonable person of ordinary intelligence to be government-issued. This knowledge would itself have constituted sufficient notice to defendant of the unlawfulness of his conduct. Moreover, this requirement essentially eliminates any potential for arbitrary or discriminatory enforcement because individuals who did not know that the identification documents in issue were false will not be criminally culpable. *See Klecker*, 348 F.3d 69, 71; *United States v. Carlson*, 87 F.3d 440 (11th Cir. 1996). Thus, the statute criminalizes only a narrow category of conduct: the knowing production of identification documents that appear to a reasonable person to be issued by or under authority of the United States Government, where the defendant knows that the identification document would appear to a reasonable person to be government-issued. Accordingly, § 1028 is not void for vagueness as applied to the facts of this case.

V.

For the reasons stated above, defendant is not entitled to entry of judgment of acquittal.

Specifically, the government adduced sufficient evidence at trial to sustain a conviction on Count 1 of the indictment. Moreover, the government presented substantial evidence from which a jury could conclude that venue was proper in the Eastern District of Virginia. Finally, 18 U.S.C. § 1028 is not unconstitutionally vague as applied to the facts of this case.

An appropriate Order will issue.

Alexandria, Virginia
January 6, 2010

/s/
T. S. Ellis, III
United States District Judge